## Pearson v. The Central National Bank of Philadelphia, Appellant.

112

Argued October 17, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*G. Von Phul Jones,* and with him *Brown & Williams,* for appellant, cited: Klinger v. Wick, 266 Pa. 1; Brill v. Brill, 282 Pa. 276.

*Edmund W. Kirby,* for appellee, cited: N. Y. C. & H. R. R. Co. v. Deer Creek Lumber Co., 49 Pa. Su-

perior Ct. 453; Implement Mfg. Co. v. Hench, 219 Pa. 135.

Opinion by Gawthrop, J., January 30, 1931:

On September 13, 1921, plaintiff entered into an agreement in writing with one Rhoades to purchase twenty-four properties on Jefferson Street, Philadelphia, for the consideration of $172,800, under and subject to a blanket building and loan association mortgage or mortgages of $72,000, to be placed on the premises. The agreement provided that title to the premises was to be clear of encumbrance, except certain other mortgages mentioned and building restrictions, and that "title insurance for the said properties including title insurance on the $72,000 building association mortgage or mortgages" should be paid for at the expense of the vendee. It provided further that title insurance was to be ordered at the American Bank and Trust Company (now The Central National Bank of Philadelphia, defendant). Pursuant to this agreement application was made to the American Bank and Trust Company for insurance of the mortgagee's interests. The trust company then prepared in duplicate a written statement, called by its counsel "settlement certificate," setting forth the encumbrances and claims to which the premises were subject and which would be excepted in the policy of insurance unless removed. This certificate consisted of a printed form and several attached sheets of paper, one of which showed delinquent water rents amounting to $457.17. On or about October 14, 1921, a settlement was had at the office of the trust company. The money furnished by the mortgagee building and loan association or associations and the balance of purchase money to be paid by the vendee was deposited with the trust company. William S. Peace, Esquire, represented the grantor and the mortgagees at the settlement, and

John A. Thomas, a real estate agent, represented the grantee. The settlement clerk who was acting for the trust company in the settlement presented to Mr. Thomas what purported to be a duplicate copy of the settlement certificate to which reference has been made. Mr. Thomas testified that the question whether the water rents had been paid came up at the settlement, and that the title clerk who had charge of the settlement said that he would see that they were paid or have the receipts furnished. Whereupon a statement of settlement showing a balance of $24,449.06 due the grantor was presented by the title clerk to Messrs. Peace and Thomas and approved by them, and settlement was made in accordance therewith. Some time later the grantee discovered that the delinquent water rents noted on the settlement certificate had not been paid and she was required to pay them. She brought this action in assumpsit against the American Bank and Trust Company to recover the amount thereof and has a verdict and judgment, from which defendant appeals.

The principal question presented by appellant's statement of the questions involved is whether it was entitled to a directed verdict and to judgment n. o. v. Its contention is that no contractual relation existed between it and plaintiff and that its contract was with the mortgagees alone under the title insurance policy issued to them. It is conceded by appellee that the title insurance was applied for only on behalf of the mortgagees. But her claim is not made under the insurance contract. She avers in her statement of claim that "defendant for valuable consideration undertook and agreed to make settlement" between the parties to the agreement of sale and made a settlement at its office and "then and there undertook to pay the accrued taxes and water rents against the said properties," but "failed to

pay or see that certain water rents accrued against the said properties and set forth in the aforesaid settlement certificate were paid." To us it seems clear that this is an averment of a contract between plaintiff and defendant in which the latter undertook to perform, as plaintiff's agent, the duties of a conveyancer. There were two independent contracts, one relating to the insurance of the title in favor of the mortgagees, and the other relating to defendant's duties as a conveyancer. Plaintiff's money, which defendant had in its hands, paid the consideration which passed to the latter under both contracts. Therefore, in making settlement between plaintiff and her vendor defendant was not performing a mere gratuitous accommodation to the former, but was doing something for which it was paid by plaintiff. The facts that the settlement clerk said that he would see that the water rents were paid, or have the receipts produced, and that the certificates were marked by the settlement clerk "for the company to pay them" (which the jury could find from the evidence) strongly support plaintiff's contention that defendant was acting as her agent at the settlement. Under familiar cases the representations of the settlement clerk at the settlement, made within the apparent scope of his authority, and in a matter which had been committed to his care, were the act of, and were binding upon, the company. In our view the question whether or not the representative of the company promised plaintiff's representative at the settlement that the water rents in question would be paid out of the funds in its hands if they had not been paid already was one of fact for the jury. We are not impressed by appellant's argument that plaintiff is concluded by her agent's approval of the statement of settlement which did not show that any of the money in the hands of the company was to be applied to the payment of the delinquent water rents. The question

whether these water rents remained unpaid had not been determined when this paper was signed. Therefore, such an item had no place in the statement, although the balance payable to the grantor by the company would be reduced by the amount of unpaid water rents if the company found they were unpaid. The company was bound to distribute plaintiff's moneys in accordance with the agreement made at the time of the settlement, for the making of which it was paid out of plaintiff's money.

The only other complaint covered by the statement of questions involved is whether the court below erred in permitting plaintiff's witness to testify that after it was learned that these water rents had not been paid he called on the title officer of the company who told him that his investigation disclosed that when this settlement took place the vendors promised to produce the receipts for the water rents which were not deducted at the settlement, and that this was not done. Appellant was in no way prejudiced by this testimony, because it related to facts established by other proof, which it did not undertake to controvert.

The judgment is affirmed.